(135 P.3d 1263)
No. 94,350

MIDWEST LAND INVESTMENT COMPANY, LLC, *Appellee*, v.
DOUGLAS VEACH and DAVID FRANCIS, *Appellants*.

Opin-
ion filed June 16, 2006.

*Michael S. Martin*, of Westwood, for appellants.

*Jennifer M. Hannah* and *R. Scott Beeler*, of Lathrop & Gage, L.C., of Overland Park, for appellee.

Before MCANANY, P.J., MARQUARDT and CAPLINGER, JJ.

MCANANY, J.: Douglas Veach and David Francis (collectively referred to as Veach) appeal the district court's entry of summary judgment in a declaratory judgment action commenced by Midwest Land Investment Co., LLC (Midwest). We affirm.

Joel and Lynn Shafton were in bankruptcy. The assets of the estate included two parcels of real estate located in Johnson County. In November 2003, the bankruptcy trustee entered into a

real estate contract for the sale of these parcels to Dan Quigley for $155,000. Quigley was a member of Midwest. Paragraph 14 of the contract provided:

"Buyer's and Seller's performance hereunder shall be contingent upon and subject to Seller's obtaining a final and nonappealable order from the Bankruptcy Court, pursuant to 11 U.S.C. § 362(f), authorizing Seller to consummate the sale herein described . . . . Seller shall initiate the appropriate proceedings in the Bankruptcy Court to obtain said Court Order and shall prosecute said proceeding in good faith. In the event that the Bankruptcy Court issues a decision not to issue such Court Order, this contract shall be terminated . . . ."

On December 10, 2003, Quigley assigned to Veach his interest in this real estate sales contract for $10,000, the amount of earnest money Quigley paid under the contract. The assignment, standing alone, provided Quigley with nothing more than the return of his earnest money. Therefore, and on that same day, Midwest and Veach entered into a participation agreement for development of the real estate. Under this agreement, and as additional consideration for Quigley having assigned the real estate contract to Veach, Veach agreed to give Midwest the initial opportunity to bid for a contract to provide marketing and sales services for the real estate. Further, Veach agreed to give Midwest 10% of the net profits from the ultimate sale of the real estate or $250,000, whichever was less.

A week later, on December 18, 2003, the bankruptcy trustee advised that objections to the real estate sale had been filed. He reported that there were three potential buyers for the property, all of whom had apparently entered into contracts with the trustee similar to the one entered into by Quigley. A hearing was set for the following day, December 19, and the parties were urged to attend since the trustee predicted that the court would order an immediate auction of the property among the three potential buyers and thereafter approve the highest bid.

Veach appeared at the hearing on the following day. As predicted, the court ordered an immediate auction and Veach's bid of $275,000 was the highest. The court immediately confirmed the sale.

On February 17, 2004, Veach advised Midwest that he considered the participation agreement to be void and did not intend to comply with it since Veach acquired the real estate not through the contract assigned by Quigley, but rather by being the successful bidder at the auction. Midwest responded by filing suit in the district court for a declaratory judgment declaring that the participation agreement remained a valid and enforceable agreement. When the court sustained Midwest's motion for summary judgment and upheld the validity of the participation agreement, Veach appealed.

We need not review the well-known standards for summary judgment recently reiterated in *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005). Since we are in as good a position as the trial court to review the record and consider the parties' claimed uncontroverted facts and the legal conclusions that may flow from them, our review is de novo. See *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004). This is particularly so when, as here, there is no dispute as to the facts.

*Consideration*

Veach claims the district court erred in finding consideration for the participation agreement. The participation agreement was entered into as an inducement for Quigley to assign to Veach the real estate sales contract. Veach argues that the existence of other sales contracts between the trustee and other prospective buyers rendered Quigley's contract worthless, and his assignment transferred nothing of value to Veach.

We are not persuaded by this argument. First, Veach knew when the parties entered into the participation agreement that the contract that was the subject of the assignment was contingent upon approval by the bankruptcy court. Second, the assignment conveyed all of Quigley's rights in the real estate contract to Veach. It was the participation agreement that induced Quigley to give up these contract rights. In exchange for the promises in the participation agreement, Veach received the right to buy the real estate for $155,000 absent a challenge to the sale in bankruptcy court. When the sale was challenged, Veach had the opportunity to bid

on the property only because he succeeded to the interest of Quigley, who originally contracted to buy it. It was the promises contained in the participation agreement that induced Quigley to give up his rights in the real estate sales contract. Absent Quigley's contract and the assignment, Veach would have had no opportunity to become the successful bidder.

Veach argues that he could have bypassed Quigley entirely and dealt directly with the trustee, as other prospective buyers apparently did, to negotiate his own real estate sales contract for the property. While this may be true, this is not what Veach did. Since the assignment provided Quigley with no benefit other than the return of the earnest money he had paid, the participation agreement served as the added inducement for Quigley to forego his rights in the real estate sales contract in exchange for the benefits Midwest, his company, would enjoy. Thus, by entering into this transaction, Veach reaped the benefit of the time and effort expended by Quigley in contacting the trustee and negotiating the real estate sales contract.

By using the participation agreement to induce Quigley to assign to Veach his rights in the real estate sales contract, Veach eliminated Quigley as a competing potential buyer of the property. In arguing a lack of consideration, Veach focuses on the benefit, or lack thereof, to him. But consideration also may be based on the rights that Quigley gave up: here, the right to acquire the property if the court approved the contract, and the right to bid on the property if the court did not. See *In re Estate of Shirk*, 186 Kan. 311, 321-22, 350 P.2d 1 (1960). Before December 10, 2003, Quigley was a potential future owner of property in fee simple. After December 10, 2003, Quigley had no prospect of acquiring the property outright, but only the prospect that his company might share in future development profits if Veach could successfully close the transaction. There clearly was consideration to support the participation agreement.

### Mutual Mistake

Veach next argues that the district court erred in granting summary judgment because the documents were not clear and un-

ambiguous on their face and were not explained by parole evidence, which was necessary for their interpretation. Veach argues that the ambiguity arose from the lack of any provision in the documents regarding what would happen if the purchase price for the real estate increased substantially. Veach claims that the documents are silent on this issue because there was a mutual mistake that the property could be acquired for $155,000.

The contingent nature of the deal was made clear in paragraph 14 of the real estate contract. There is no evidence that Quigley was mistaken and unaware of the possibility of an auction. Veach had the duty to read and obtain an explanation of the contents of the written documents before signing them. See *Albers v. Nelson*, 248 Kan. 575, 578-79, 809 P.2d 1194 (1991). He could have inquired further of the bankruptcy trustee regarding the contingency of court approval. If he was mistaken about the contents of the documents, the general rule is that in the absence of fraud, such a unilateral mistake will not excuse his duty to perform. See 248 Kan. at 580. Veach makes no allegation of fraud by either Quigley or Midwest.

Finally, the documents are silent on the question of what happens if the sale cannot be consummated for $155,000, because performance under the participation agreement is not contingent on the ultimate price of the real estate. The assignment, the participation agreement, and the real estate sales contract are clear and unambiguous and do not require parole evidence.

In reality, Veach's arguments address an objection not to the existence of consideration legally sufficient to support a contract, but rather to the adequacy of the consideration to support a profitable business transaction. It is not the task of the courts to rewrite contracts or deny their enforcement simply to correct an improvident business decision.

Veach acquired rights to the real estate sales contract by giving up a portion of the future profits he anticipated from development of the property. He knew that the real estate sales contract was contingent on court approval. When approval was not forthcoming, he participated in an auction for the property which resulted in an increased acquisition cost. At the time of his bid, Veach knew of

his obligation to Midwest should he be the successful bidder and should have taken that fact into account. Veach now claims, in retrospect, that his obligation to Midwest under the participation agreement undercuts the profitability of the transaction. In other words, he either gave up too much in the participation agreement or made too high a bid in the auction for the property. Our task is to review the soundness of decisions of trial courts, not the soundness of business decisions of litigants. That review leads us to conclude that the district court did not err in granting summary judgment in favor of Midwest.

Affirmed.